UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY LEE PITTMAN,

       Plaintiff,                  CIVIL ACTION NO. 13-cv-10708

       v.                           DISTRICT JUDGE GERSHWIN A. DRAIN

COMMISSIONER OF                MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Kelly Lee Pittman, proceeding *pro se* in this matter, seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to Social Security benefits for his physical impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (Docket no. 13) and Defendant's Motion for Summary Judgment (Docket no. 16).  Plaintiff has also filed a Motion for Medical Evidence for Disability (Docket no. 17), which the undersigned will construe as a response to Defendant's Motion for Summary Judgment.  The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  (Docket no. 4.)  The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.     RECOMMENDATION**

The undersigned recommends that Plaintiff's Motion for Summary Judgment (Docket no. 13) be DENIED and that Defendant's Motion for Summary Judgment (Docket no. 16) be

GRANTED. The undersigned further recommends that Plaintiff's Motion for Medical Evidence for Disability (Docket no. 17) be terminated.

## II. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits and an application for supplemental security income, both with a protective filing date of July 7, 2011, alleging disability beginning January 1, 2011, due to back, left arm, and shoulder problems; left leg pain; and hearing problems. (*See* TR 12, 161.) The Social Security Administration denied Plaintiff's claims on November 2, 2011, and Plaintiff requested a *de novo* hearing. (TR 12.) On July 26, 2012, Plaintiff appeared with a representative and testified at a hearing before Administrative Law Judge (ALJ) Betty Roberts Barbeito. (TR 12, 20.) In a September 14, 2012 decision, the ALJ found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 12-20.) The Appeals Council declined to review the ALJ's decision (TR 1-3), and Plaintiff commenced this action for judicial review. The Court then ordered Plaintiff and Defendant to file their respective Motions for Summary Judgment. (Docket no. 12.) Plaintiff filed his Motion, which consists of one sheet of paper on which he wrote, "This is my motion for summ Judgeing [sic]" (docket no. 13); Defendant filed the requested Motion (docket no. 16); and Plaintiff filed a Motion for Medical Evidence for Disability (docket no. 17), which the undersigned will construe as a response to Defendant's Motion.

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

### A. Plaintiff's Testimony

Plaintiff was 46 years old at the time of the administrative hearing and 45 years old at the time of alleged onset. Plaintiff testified that he was single, but still looking, and was not aware of whether he had any dependent children under the age of eighteen. (TR 51.) He testified that he took

2

special education classes, graduated from high school, and then went to "Mo Tech" but did not receive a certificate. (TR 51.) Plaintiff added that he had applied to join the military, but they rejected his application because he was not bright enough. (TR 51.) Plaintiff testified that he was not currently working and that he last worked on June 30, 2011. (TR 51-52.) Plaintiff testified that food stamps were his only source of income. (TR 71.)

Next, Plaintiff's attorney made an opening statement and then proceeded to examine Plaintiff. (TR 56-62.) Plaintiff testified that his last employer in June of 2011 was Labor Ready. (TR 62.) Plaintiff elaborated that his work at Labor Ready varied from day to day, but that he generally washed and removed snow from cars. (TR 63.) He added that he worked for Labor Ready sporadically for a period of three months. (TR 64.) Plaintiff then testified that his last permanent job was as a tow truck driver for which he handled the emergency road service like towing cars from accident scenes, changing tires, unlocking cars for people, jump starting cars, and fixing flats. (TR 65, 66.) He added that the most he would have to lift on that job was 75 to 100 pounds. (TR 66.) Plaintiff testified that he also worked in roofing on a full-time basis for about a year for his sister and brother-in-law. (TR 65.) He stated that the roofing job required heavy lifting of items such as shingles, ladders, debris and tarps and estimated a bundle of shingles to weigh about 90 pounds. (TR 67.)

Plaintiff testified that his current problems affecting his ability to work were a herniated disc in his neck and a "squished disc" in the middle of his back. (TR 67.) He added that he has had arthritis and diabetes since he was 12 years old and that he still doesn't really understand what diabetes is but that it was starting to affect him much more. (TR 67-68.) Plaintiff added that he was prescribed 2,000 milligrams of Metformin per day for his diabetes, but he hadn't been taking it lately because he was broke. (TR 68.) Plaintiff admitted that the chief problem that prevents him from

3

being able to work was his neck. (TR 68.) He explained that sometimes it was hard to hold his head up whether he was standing, sitting, or walking. (TR. 68.) He added that the pain wasn't as bad when he laid down because the weight from his head wasn't on his neck. (TR 68.) Plaintiff testified that he lied down five to six times per day for an hour or two each time and that sometimes he didn't feel like getting out of bed. (TR 69.) Plaintiff described his pain as a sharp, agonizing, ongoing pain in his neck and the middle of his back. (TR 69.)

Plaintiff testified that he had been living in his car from December 5, 2011, until the day before the hearing but that he had to sell his car and his belongings so that he could afford to make it to the hearing. (TR 69, 72.) Plaintiff admitted that he was not sure where he would live after the hearing. (TR 69-70.) Plaintiff testified that while he was living in his car for eight months, he would walk to a store or to the park in an effort to be around people and avoid depression. (TR 71.) He elaborated that he would park his car at the store, walk about a half mile to the park, and sit down at the park until he walked back to his car. (TR 71.) Plaintiff added that he generally slept in his car and used the bathroom at the store. (TR 71-72.) He also stated that he would spend some of his time parked in the store parking lot in the shade. (TR 72.)

Plaintiff testified that he had been living with his sister before living in his car, but he had to leave because she couldn't afford to pay his bills. (TR 69.) Plaintiff testified that while he was living with his sister, he was doing as little as possible so he could nurse his wounds. (TR 73.) He said that would generally lie down five to six times per day for one to two hours at a time while living with his sister. (TR 73.) Plaintiff testified that with regard to doing chores at his sister's house, he would wash a dish or two until he couldn't stand anymore. (TR 73.)

Plaintiff testified that he could generally sit for 15 to 20 minutes before he had to either lie down or walk around. (TR 73.) He further testified that he could stand for ten to 15 minutes and

4

walk for about four blocks. (TR 74.) Plaintiff stated that it was a chore to use his hands due to arthritis; he was wearing braces on his right and left wrists at the hearing, which he received from his sister some years prior. (TR 74-75.) He added that he had numbness and tingling in both hands and the middle toe on his left foot. (TR 75.) He also stated that he had trouble with memory and comprehension due to his diabetes. (TR 76.) Plaintiff testified that he was taking Lorcet for pain, Xanax for anxiety, and Soma for relaxation. (TR 76.)

Next, the ALJ examined Plaintiff. Plaintiff testified that he drove before he sold his car, mainly to purchase food. (TR 78.) Plaintiff added that he drove about 250 miles on December 5, 2011, when he was evicted from his sister's house. (TR 78.) Plaintiff stated that he did not smoke, drink alcohol, or use illegal drugs. (TR 78-79.) He further testified that his hobby was breathing and that his daily activity was waking up and reading his diabetes magazine. (TR 80.) Plaintiff told the ALJ that he took Metformin for his diabetes and that he had a few more prescriptions for diabetes medications in the pharmacy but couldn't pick them up because he couldn't afford them. (TR 80-81.) Plaintiff also told the ALJ that he couldn't work mainly because of his neck and back. (TR 82.) When asked about the collar that he was wearing on his neck, Plaintiff admitted that he received it from his sister and that no doctor had ever advised him to wear a collar. (TR 82.)

### B.  Medical Evidence

The undersigned has thoroughly reviewed Plaintiff's medical record. In lieu of summarizing Plaintiff's medical history, the undersigned will make references and citations to the record as necessary in response to the parties' arguments.

The undersigned acknowledges that Plaintiff's Motion for Medical Evidence for Disability includes various references to his current symptoms and medications. (*See* docket no. 17.) But in cases where, as here, the Appeals Council declines to review the ALJ's decision, judicial review is

limited to the evidence that was part of the record before the ALJ. *Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993); *Casey v. Sec'y*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Sec'y*, 974 F.2d 680, 685 (6th Cir. 1993). Further, under 20 C.F.R. § 404.970(b), "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." Thus, the "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt*, 974 F.2d at 685 (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court may still remand the case to the ALJ to consider this additional evidence on a showing of "good cause," 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001), but a plaintiff "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y*, 865 F.2d 709, 711 (6th Cir. 1988.) (citing *Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton*, 2 F.3d 692 (6th Cir. 1993). Plaintiff has not demonstrated (or alleged) that the Secretary would have reached a different conclusion if presented with this evidence. Therefore, while the undersigned is cognizant of Plaintiff's complaints, the Court cannot consider this evidence as part of its present review.

### C. Vocational Expert's Testimony

First, the Vocational Expert (VE) confirmed that she had been listening to Plaintiff's testimony throughout the hearing and had reviewed the documents in Plaintiff's file regarding his work activities. (TR 83-84.) The VE then testified that she used the Dictionary of Occupational Titles (DOT) to classify Plaintiff's past work and that her testimony would be consistent with the DOT. (TR 84.) Next, after some clarification, the VE identified and classified Plaintiff's past relevant work as (1) a patient driver in the chauffeur driver category, which is semi-skilled and at

the light exertional level per the DOT, but performed at the heavy exertional level according to Plaintiff's testimony; (2) a tow truck driver as semi-skilled at the medium exertional level per the DOT, but performed at the heavy exertional level per Plaintiff's testimony; and (3) a roofer helper as unskilled at the very heavy exertional level. (TR 88.)

The ALJ asked the VE whether a hypothetical person of the same age, education, and work experience as Plaintiff, who alleges impairments with his back, left arm, and shoulder, with pain radiating down his left leg; has degenerative disc disease and a herniated disc; has had to go to the hospital and the emergency room on numerous occasions because of these impairments; has complaints of pain in the upper back, severe, aching, dull pain at a level 9 out of 10, pain in the thoracic spine, and back pain that radiates down his leg; can stand for up to 15 minutes at a time for a total of 3 to 4 hours in an 8-hour workday, walk for up to 15 minutes at a time for up to 3 to 4 hours in an 8-hour workday, and sit for 1 to 2 hours at a time for up to 3 to 4 hours total in an 8-hour workday; and can lift 10 to 20 pounds could perform any of Plaintiff's past relevant work. (TR 89-92.) The VE testified that such an individual could not perform Plaintiff's past relevant work because the frequency of changing positions every 15 minutes would be problematic. (TR 92.)

The ALJ then asked the VE to consider whether a second hypothetical person, assuming all of the conditions of the first hypothetical, but who would be able to sit or stand at will, could perform any of Plaintiff's past relevant work. (TR 92.) The VE testified that such an individual would not be able to perform any of Plaintiff's past relevant work. (TR. 92-93.) Lastly, the ALJ asked the VE whether there would be any other jobs available to that individual in the local or national economy. (TR 93.) The VE responded that such an individual would be able to perform unskilled work at the light exertional level as a counter clerk, for which there were approximately 6,000 jobs in the lower peninsula of Michigan; a parking lot attendant, for which there were 1,800

7

jobs in Michigan's lower peninsula; and as an assembler for which there were 4,000 jobs in the lower peninsula. (TR 93.)

Next, Plaintiff's attorney asked the VE to "assume a hypothetical claimant along the lines of what the judge started out with" who "would be able to walk for 15 minutes at a time, sit for up to one hour a time, stand for up to 15 minutes at a time, and the total in an eight hour work day would be such that the person would be capable of sitting four hours total, would be standing approximately one hour total and would be lying down approximately three hours total" and explain what effect that individual's limitations would have on his ability to perform Plaintiff's past relevant work or any other jobs. (TR 94.) The VE testified that those limitations would be work preclusive. (TR 94.) Plaintiff's attorney followed that question by asking the VE how much a person would be allowed to lie down at work before it would become work preclusive. (TR 94.) The VE responded that, in her experience in speaking with employers, the only opportunity or time that a worker could reasonably lie down would be on their mid-day break. (TR 94-95.)

## IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2011; that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2011; and that Plaintiff suffered from the following severe impairments: mild degenerative lumbar disc disease and cervical neck degenerative disease. (TR 14.) The ALJ also found, however, Plaintiff's diabetes to be non-severe and that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 15.) After considering the record and Plaintiff's testimony, the ALJ concluded that Plaintiff had the following residual functional capacity (RFC):

> [T]he claimant has the residual functional capacity to perform light work . . . except

> he is able to sit for 3-4 hours in an 8 hour day but must be able to stand at will from a sitting position; he is able to walk for 3-4 hours in an 8-hour workday for 15 minutes at a time; he is able to stand for 3-4 hours in an 8-hour workday [] for approximately 15 minutes at a time.

(TR 16-18.) Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 18-19.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from January 1, 2011, through the date of the ALJ's decision. (TR 19.)

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter

differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.    Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"

*Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

As noted, Plaintiff's Motion for Summary Judgment is a one-page document in which Plaintiff wrote, "This is my motion for summ Judgeing [sic];" it does not set forth the legal grounds under which Plaintiff seeks review of Defendant's decision. (*See* docket no. 13.) Defendant argues that the ALJ's decision is supported by substantial evidence. (*See* docket no. 16.) In Plaintiff's Motion for Medical Evidence for Disability, which the undersigned has construed as a response to Defendant's Motion for Summary Judgment, Plaintiff asserts that he is disabled because he suffers from arthritis, anxiety, diabetes, three degenerative discs in his back and neck, and a herniated disc in his neck. (Docket no. 17 at 1.) He further asserts that he cannot work anymore because he is in pain and will be for the rest of his life unless there is a cure for arthritis, diabetes, anxiety, spine and neck problems, and bipolar disorder. (*Id*. at 2.) The crux of Plaintiff's argument simply is that he

disagrees with the ALJ's decision that he is not disabled. The undersigned will assume that Plaintiff is not challenging the ALJ's determination at Steps 1 or 2 of the sequential evaluation process because these findings were in Plaintiff's favor. Additionally, Plaintiff has presented no evidence to suggest that the ALJ's Step-3 determination was inappropriate. Therefore, the undersigned will confine the analysis to a review of the ALJ's Step 4 and Step 5 determinations.

### 1.   *The ALJ's Step-4 Finding; Plaintiff's RFC*

The ALJ considered the evidence at length and concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce some of his alleged symptoms. Once this finding was made, the ALJ was required to evaluate the evidence as a whole, including Plaintiff's own statements about his pain or other symptoms, and consider the extent to which the intensity and persistence of the symptoms could limit his ability to work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). Whenever the evidence as a whole fails to support a claimant's statements about the intensity, persistence, or limiting effects of his pain or symptoms, the ALJ is required to make a finding on the claimant's credibility. Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996). "[A]n ALJ's findings based on the credibility of [a claimant] are to be accorded great weight and deference." *Walters v. Comm'r*, 127 F.3d at 531.

Here, the ALJ provided an accurate summary of Plaintiff's testimony and his subjective complaints about the effects of his pain and other symptoms on his ability to work. In considering Plaintiff's testimony, the ALJ found that certain of Plaintiff's allegations indicated that he was not as limited as other aspects of his testimony suggested. (TR 16.) These allegations included that Plaintiff could walk for a half mile after parking his car, walk two to four blocks at a time for exercise, stand for 10-15 minutes at a time, sit for 15 to 20 minutes at a time, lift ten pounds, and drive as needed, including a trip of 250 miles. (TR 16-17.) Ultimately, the ALJ found that

Plaintiff's testimony reflected "considerable functional ability, despite his condition." (TR 17.)

Next, the ALJ considered the medical evidence, the location, duration, frequency and intensity of his pain, his medication use, and other evidence of record as required by §§ 404.1529(c)(3), 416.929(c)(3), and concluded that the objective findings failed to support his allegations of disabling symptoms and limitations. (*See* TR 16-17.) The ALJ found that the record contained periodic reports of back and neck pain involving mild, and at times severe, symptoms, strain, tenderness, and one instance of limited range of neck motion but that his musculoskeletal and neurological examinations were otherwise normal or unremarkable. (TR 16.) She noted that the record did not reflect motor, strength, neurological, or sensory loss, which might reflect Plaintiff's ability to hold more than ten pounds or a medical opinion which limited Plaintiff to handling less than 20 pounds. (TR 17.) She found that Plaintiff's symptoms were well controlled by medications with little or no side effects. (TR 17.) She cited medical evidence contrary to Plaintiff's testimony in which he described his leg pain as a "little bit" of pain that comes and goes. (TR 17, 242.) The ALJ also noted that the record did not reflect instances of dizziness resulting from high blood sugar levels, but rather a diagnosis of diabetes which was thereafter controlled with medication without further incident. (TR 17.) Finally, with regard to Plaintiff's alleged hearing problems, the ALJ cited to evidence in the record that demonstrated improvement upon cleaning out the build up on wax in July of 2011. (TR 18.) All of this goes to show that the ALJ did not reject Plaintiff's statements about the intensity and persistence of his pain solely because the objective medical evidence did not support his statements, but rather considered other relevant factors as required by 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

An ALJ "may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree so long as the ALJ properly sets forth the

basis for determining Plaintiff's credibility. SSR 96–7p. Here, the ALJ found that Plaintiff's statements were not credible, and the undersigned can find no fault in the ALJ's analysis of Plaintiff's subjective complaints. Moreover, the ALJ appears to have properly weighed the medical and opinion evidence of record. The undersigned has found no evidence to conflict with the ALJ's RFC finding, let alone any reason to suggest that the ALJ's finding is not supported by substantial evidence.

### 2. *The ALJ's Step-5 Finding*

In making his Step-5 finding, the ALJ relied on the testimony of the VE. In a hypothetical question posed to the VE, an ALJ is only required to incorporate those limitations that he finds credible and supported by the record. *See Casey*, 987 F.2d at 1235. Here, the ALJ presented all of the limitations of the RFC in her hypothetical questions to the VE, and the VE testified that there are jobs available for a person with these limitations. (TR 93.) Plaintiff has not challenged the reliability of the VE's testimony or given any other reason to discount the ALJ's reliance on the VE's testimony regarding Plaintiff's ability to perform a significant number of jobs in the national economy. Therefore, the ALJ's findings at step five are supported by substantial evidence.

## VI. CONCLUSION

For the reasons stated herein, the undersigned recommends that the Court DENY Plaintiff's Motion for Summary Judgment (docket no. 13), GRANT Defendant's Motion for Summary Judgment (docket no. 16), and terminate Plaintiff's Motion for Medical Evidence for Disability (docket no. 17).

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 30, 2014        s/ Mona K. Majzoub
                            MONA K. MAJZOUB
                            UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Kelly Lee Pittman and Counsel of Record on this date.

Dated: July 30, 2014        s/ Lisa C. Bartlett
                            Case Manager

15